# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One Apple iPhone with dark blue case, with no visible IMEI, ) Case No.
Currently located at Hamilton County Sheriff's Office, )
Regional Electronics and Computer Investigation (RECI) ) 1:20 MJ 210
Task Force, 644 Linn Street, Cincinnati, Ohio 45203 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (incorporated by reference).

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason O'Brien, Task Force Officer FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/27/2020

*Judge's signature*

City and state: Cincinnati, Ohio    Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is described as:

**One Apple iPhone with dark blue case, with no visible IMEI**

The Device is currently located at Hamilton County Sherriff's Office, Regional Electronics and Computer Investigation (RECI) Task Force, 644 Linn Street, Cincinnati, Ohio 45203.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Kenny HARVEY**, and other yet unknown individuals including:

   a. Evidence that shows the Devices were used to further facilitate the distribution of illegal narcotics;

   b. Lists of customers and related identifying information;

   c. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. Any information recording schedules or travel;

   f. Any and all stored telephone numbers;

   g. Any and all text messages, to include incoming, outgoing, saved, deleted and drafts;

   h. Any and all emails, sent, received, deleted, draft and/or saved;

   i. Any and all voicemails;

   j. Any and all photographs, electronic images, video recordings and/or images saved and/or deleted on the cellular device;

   k. Any and all data retrieved from Apps on the device;

   l. Any and all entries made in a calendar and/or notebook feature;

   m. Any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID and/or IMSI.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONES DESCRIBED AS:<br><br>One Silver Apple iPhone, IMEI:354407060489399; and<br><br>One Apple iPhone with dark blue case, with no visible IMEI;<br><br>Currently located at Hamilton County Sherriff's Office, Regional Electronics and Computer Investigation (RECI) Task Force, 644 Linn Street, Cincinnati, Ohio 45203 | CASE NO.<br><br>20MJ 210<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Jason O'Brien, a Task Force Officer with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer with the FBI and have been so employed since September 2011. I am also a Cincinnati Police Officer and have been since August 2002. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. I have also participated in the execution of federal

search warrants and federal arrest warrants in relation to these investigations. Additionally, I have participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. I have also been involved with the monitoring of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. I am familiar with the methods of concealing the whereabouts of illegal drugs, the methods used to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods used to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking. I am also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

3. During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in many illicit drug trafficking investigations, violent crimes investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction; have involved: the use of confidential informants; the analysis of pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of poll cameras and vehicle cameras; and the execution of search warrants.

4. I am aware, through my training, experience, and knowledge, that those involved in the illegal sale and distribution of narcotics often store in their cell phones and mobile devices,

2

contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. Often the information stored in the contact list may be in the form of a code to conceal the true identity of the contact.

5. Through my training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is one Silver Apple iPhone, IMEI: 354407060489399; and one Apple iPhone with dark blue case with no visible IMEI, both located during a Search Warrant that was executed on Kenny HARVEY's residence at 5048 Mt Alverno Road Cincinnati, Ohio on February 21, 2020, hereinafter the "Devices." The Devices are currently located at Hamilton County Sherriff's Office, Regional Electronics and Computer Investigation (RECI) Task Force.

8. The applied-for warrant would authorize the forensic examination of these Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. Since 2017, the Cincinnati Police Department (CPD) has been investigating a Drug Trafficking Organization, herein after DTO, led by Kenny HARVEY a/k/a "SK." Multiple confidential informants and confidential witnesses have reported that HARVEY is selling kilogram quantities of heroin, fentanyl, methamphetamine and marijuana. HARVEY also uses multiple members of his organization to sell narcotics on his behalf. Throughout the course of the Cincinnati Police Department's investigation, law enforcement has conducted several seizures

3

and/or arrests related to the HARVEY and HARVEY's DTO, which included the seizure of narcotics, the arrest of multiple individuals for possession of narcotics and/or trafficking drugs, and cash seizures.

10. In December 2018, the Cincinnati FBI opened an investigation into the All State Violent Crime Organization, which was being led by Benwan EDWARDS and Marqui CONLEY in Middletown, Ohio. As a result of that investigation, on April 8, 2019 the Honorable Timothy S. Black, United States District Court Judge approved the interception of wire communications to and from a phone used by Benwan EDWARDS. Throughout the course of those interceptions investigators intercepted numerous conversations reference the sale of narcotics.

11. On April 17, 2019, investigators intercepted a call between EDWARDS and ███████ ███████ is a close associate of HARVEY. During the call ███████ put HARVEY on the phone. EDWARDS was interested in purchasing narcotics from HARVEY. HARVEY offered to sell EDWARDS heroin/fentanyl mixture, methamphetamine and marijuana. HARVEY and ███████ instructed EDWARDS to meet them in Cincinnati, Ohio. Investigators were able to follow EDWARDS and his associate Marqui CONLEY to 1214 Drott Ave in Price Hill, Cincinnati, Ohio where they met with HARVEY and ███████ As discussed below 1214 Drott is a known narcotics distribution location for HARVEY. EDWARDS and CONLEY met with HARVEY and ███████ for approximately 2 and a half hours. Based on the calls intercepted after the meeting investigators do not believe EDWARDS purchased any narcotics on April 17, 2019.

12. On May 2, 2019, EDWARDS and CONLEY were charged by criminal complaint with conspiracy to possess and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. On May 6, 2019, EDWARDS was arrested on those charges. During the interview and post Miranda, EDWARDS was reminded of the above described intercepted call and trip to Cincinnati. EDWARDS stated that he and CONLEY

4

travelled to Cincinnati, Ohio in an attempt to meet a new source of supply. EDWARDS confirmed that he nor CONLEY purchased any narcotics because the prices were too high. EDWARDS was not asked specific questions related to HARVEY or ▇ because investigators did not want EDWARDS to know that there was a current investigation targeting HARVEY. However, investigators believe based on the above described interception, the physical surveillance and statement by EDWARDS that EDWARDS met with HARVEY at 1214 Drott to discuss HARVEY as a potential new narcotics supplier for EDWARDS.

13. A Confidential Human Source (hereinafter CHS1) has been providing information to the FBI and CPD since May 2019. CHS1 is providing information for case consideration and has provided details which law enforcement officers have vetted as reliable, concerning drug trafficking offenses related to HARVEY's DTO. This information includes cell phone numbers, vehicles, narcotics storage locations and identification of HARVEY and members of the DTO. CHS1 stated that Kenny HARVEY is a large scale narcotics trafficker. CHS1 stated that he/she has routinely observed HARVEY in possession of large amounts of narcotics, including fentanyl, "Molly," ecstasy, and marijuana. CHS1 stated that HARVEY owns and/or maintains several residences in the Cincinnati area the he uses as "stash houses." CHS1 stated that he has observed HARVEY in possession of narcotics at these "stash houses."

14. CHS1 stated that HARVEY has 5-6 different phones, all of which are iPhones. CHS1 stated that HARVEY frequently uses Apple Facetime to set up the narcotics transactions. CHS1 stated that HARVEY uses Facetime to limit his exposure to law enforcement based on HARVEY's belief that Facetime is encrypted and law enforcement is unable to intercept these communications. CHS1 stated that HARVEY often uses others to conduct the drug transactions on his behalf. CHS1 also stated that HARVEY will occasionally use Uber to drive him to conduct narcotics transactions.

15. On November 22, 2019 the Honorable Alan Triggs, Hamilton County Municipal Court Judge singed a search warrant for 3363 Queen City Ave #11. 3363 Queen City Ave #11 is the residence Lachell JONES. Prior to the execution of the warrant Jones was stopped exiting the residence. JONES was read her Miranda rights and she acknowledged that she understood her rights. ██████████ The resulting search of JONES' residence found approximately 1.4 kilograms of fentanyl mixture, 520 grams of methamphetamine, 436 grams of heroin, 321 grams of cocaine and two firearms.

16. Since May 2019, CHS1 has made several controlled purchases of narcotics from HARVEY at the direction of investigators. Some of these controlled purchases were conducted by HARVEY himself while on other occasions HARVEY sent other subjects to sell the narcotics on his behalf. The last controlled purchase made by CHS1 occurred at the end of January, 2020. All of these controlled purchases with CHS1 and Harvey were set up using Apple Facetime. Since May 2019, investigators have identified numerous different cell phone numbers being utilized by HARVEY. The majority of the cell phone numbers identified had an out of town area code.

17. On February 19, 2020 HARVEY, JONES, Keion JENKINS and Andre STEELE were charged in a multi-count indictment in the Southern District of Ohio case number 1:20-CR-021. HARVEY was charged with Narcotics Conspiracy, Possession with Intent to Distribute and multiple counts of Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.

18. Also on February 19, 2020, the Honorable Karen L. Litkovitz, United States Magistrate Judge for the Southern District of Ohio signed a search warrant for HARVEY's residence at 5048 Mt Alverno Road, Cincinnati, Ohio in case number 1:20-MJ-185.

19. On February 20, 2020, personnel from the FBI executed a search warrant at 5048 Mt. Alverno Road. During the execution of the search warrant HARVEY was found exiting the rear bedroom of the residence prior to being taken into custody. The resulting search of the residence found, in part, two Apple iPhones that were powered on, described previously as the Devices, on the nightstand of the rear bedroom. Numerous personal effects of HARVEY's were found in the bedroom including dressers and closets full of men's clothing, shoes, and cologne. Based on my training and experience, the fact that HARVEY was found exiting the rear bedroom, the presence of HARVEY's personal effects in the bedroom, and the CHS's statement that HARVEY uses iPhones, I believe the Devices belonged to HARVEY.

20. I believe, based upon my training and experience, that HARVEY was using the Devices found in his possession in furtherance of his illegal drug trafficking activities. I further believe that a search of the Devices will lead to evidence of HARVEY's violations of 21 U.S.C. §§ 841(a)(1) and 846. From my training and experience, I know that it is common for illegal drug traffickers to utilize cellular devices in furtherance of their illicit drug trafficking through calling, text messaging and the storing of images of illegal narcotics and/or ill begotten monetary gains. Further, based upon my training and experience, I know that it is common for illegal drug traffickers to utilize multiple telephones at one time in furtherance of their illegal drug trafficking.

21. I believe, based on my training and experience, that items of evidentiary value pertaining to illegal drug trafficking are currently stored inside the cellular telephone's belonging to or in the possession of Kenny HARVEY. The cellular devices are "smartphones" which have their identification numbers inside the telephone. Agents are unable to fully identify each device simply by looking at the outside of the telephone and a search of each device will further help

7

agents identify user information via IMEI, FCC ID#, cellular telephone number and any other identifying information currently stored internally in the cellular device. Both cellular telephones were seized on February 20, 2020 and are currently in the possession of the RECI.

22. The Devices are currently located at Hamilton County Sherriff's Office, Regional Electronics and Computer Investigation (RECI) Task Force, 644 Linn Street, Cincinnati, Ohio 45203. They came into the FBI's possession following a search warrant that was executed at HARVEY's residence located in Cincinnati, Ohio. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

8

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

9

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

 e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24. Based on my training, experience, and research, I know that these types of Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

10

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of these Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

29. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

investigation will be searched or have been arrested at this time. Based upon my training and experience, I have learned that, criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online through social media. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Jason O'Brien
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this __27__ day of February, 2020

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

The property to be searched is described as:

**One Apple iPhone with dark blue case, with no visible IMEI**

The Device is currently located at Hamilton County Sherriff's Office, Regional Electronics and Computer Investigation (RECI) Task Force, 644 Linn Street, Cincinnati, Ohio 45203.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Kenny HARVEY**, and other yet unknown individuals including:

   a. Evidence that shows the Devices were used to further facilitate the distribution of illegal narcotics;

   b. Lists of customers and related identifying information;

   c. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. Any information recording schedules or travel;

   f. Any and all stored telephone numbers;

   g. Any and all text messages, to include incoming, outgoing, saved, deleted and drafts;

   h. Any and all emails, sent, received, deleted, draft and/or saved;

   i. Any and all voicemails;

   j. Any and all photographs, electronic images, video recordings and/or images saved and/or deleted on the cellular device;

   k. Any and all data retrieved from Apps on the device;

   l. Any and all entries made in a calendar and/or notebook feature;

   m. Any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID and/or IMSI.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.